# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CHRIS A. GEIGER**

    **Plaintiff,**

    **v.**
                                   **Civil Action 2:10-cv-106**
                                       **Judge George C. Smith**
                                       **Magistrate Judge E.A. Preston Deavers**

**PFIZER, INC.,** *et al.*,

    **Defendants.**

## ORDER

This case arises under the Employee Retirement Income Security Act of 1974, 28 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiff, Chris A. Geiger, brings this action against Defendants CIGNA Group Insurance ("CIGNA"), Pfizer, Inc., Pfizer, Inc. Long-Term Disability Plan, and CIGNA Life Insurance Company of New York ("CLINCY"), asserting a claim under ERISA for long-term disability benefits under 28 U.S.C. § 1132(a)(1)(B). This matter is before the Court for consideration of Plaintiff's Motion for an Order to Conduct Depositions and Motion to Compel Responsive Answers to Interrogatories and Requests for Production of Documents (ECF No. 38), Defendants' Response on Opposition (ECF No. 41), and Plaintiff's Reply (ECF No. 42). For the reasons that follow, Plaintiff's Motion is **DENIED**.

**I.**

On December 13, 2010, the Court issued an Order permitting Plaintiff to pursue discovery into the circumstances surrounding Defendant's conflict of interest to the extent that the Defendant entities serve as both the plan administrator and payor of benefits. (ECF No. 28.) In that Order, the Court set forth the relevant factual background, its bases for concluding that limited conflict of interest discovery was appropriate, and guidance on the permissible scope of that discovery. The Court declined to compel Defendants to respond to the discovery Plaintiff had propounded, explaining that the discovery Plaintiff sought was overbroad and not relevant to the Court's determination of the significance of the conflict of interest. The Court instructed that the conflict of interest discovery "must be narrow and scope and must be specifically designed to discover the circumstances surrounding the conflict of interest." (Dec. 13, 2010 Order, ECF No. 106.) The Court proceeded to offer guidance on the appropriate scope of discovery, listing examples of "permitted areas of inquiry" that district courts within the Sixth Circuit have developed as well listing the types of requests that the Court perceived as not sufficiently related to the conflict of interest. (*Id*. at 9–11.) The Court incorporates herein the December 13, 2010 Order by reference.

Plaintiff now returns to the Court, again seeking an order permitting her to depose two of Defendants' employees and compelling Defendants to fully respond to several of her interrogatories and document requests. Of the twenty interrogatories and twenty-two document requests Plaintiff propounded, she asserts that Defendants' responses to twelve of the interrogatories and six of the document requests are "largely inadequate" and "legally insufficient." (Pl.'s Mot. 3, ECF No. 3.) Defendants oppose Plaintiff's Motion, asserting as they did in their objections to the discovery that Plaintiff's requests are too broad because they are not

specifically designed to address conflict of interest issues. Pursuant to Federal Rule of Civil Procedure 37, Plaintiff included a certification that she had, in good faith, conferred with Defendants to resolve the instant discovery dispute.

## II.

The Court concludes that Defendants have sufficiently responded or properly objected to each of Plaintiff's discovery requests. Significantly, beyond the administrative record, Defendants have provided Plaintiff with: (1) the name, position, and job functions for each person who was substantively involved in reviewing her claim; (2) information regarding the compensation structure for each of these positions, including information showing that compensation is not tied to claims outcomes; (3) a detailed description of the basis of performance evaluations for each of these positions, as well as hard copies of the actual Annual Performance Objectives used to evaluate these positions for the years 2008 through 2010; (4) the curricula vitae ("CVs") for all medical personnel involved in Plaintiff's claim review; (5) detailed information regarding the procedures Defendants have in place to reduce potential bias and promote accuracy (including a declaration from Richard Lodi, Senior Operations Representative); (6) Pfizer, Inc.'s file regarding Plaintiff's claim for benefits, including any communications between Pfizer, Inc. and CLINCY; and (7) a detailed description of CLICNY's Claim Policy and Procedures ("P&P"), along with the table of contents for the P&P and an invitation to Plaintiff to identify particular sections of the P&P she believes to be relevant to her claim.

The Court now turns to the contested discovery requests.

### A. Interrogatories Five, Six, Seven, Eight, Nine, and Twelve

Defendants object to several of Plaintiff's requests on the grounds that the requests amount to substantive inquiries rather than requests designed to uncover the significance of the conflict. The Court agrees that several of the requests at issue fall into this category and are outside the scope of permissible discovery, including Plaintiff's interrogatories five, six, seven, eight, nine, and twelve.

Each of these interrogatories asks Defendants to explain why they did or did not take certain actions with respect how they handled and resolved Plaintiff's claim. For example, Plaintiff asks Defendants to explain why they did or did not refer her claim to a vocational consultant or consult her physicians and to "[s]tate all facts and evidence which Defendants . . . believe indicate, or support any contention, that [Plaintiff] was not disabled on or after the date she applied for long-term disability benefits under the Plan." (Pl.'s Ints. 10, ECF No. 38-1.) Clearly, Plaintiff is asking Defendants to explain the medical reasons for its decisions, including its ultimate finding that Plaintiff is not disabled as that term is defined under the operative plan.

The Court rejects this type of merits-based discovery as beyond the limited scope of inquiry permitted in instances where a conflict of interest is created when an employer utilizes dual-role administrators. *See e.g.*, *Pediatric Special Care, Inc.*, No. 10-13313, 2011 WL 133038, at *1 (E.D. Mich. Jan. 14, 2011) (*quoting Bennett v. Unum Life Ins. Co. of Am.*, 321 F.Supp.2d 925, 933 (E.D. Tenn. 2004) ("Challenges that ask the administrator 'to rehash the medical reasons for its denial of the plaintiff's claim' are substantive in nature and therefore do not fit within the *Wilkins* discovery exception."); *Todd v. CP Kelco Group Disability Income Ins. Plan,* CIV-10-085-KEW, 2011 WL 838848, at *3 (E.D. Okla. March 1, 2011) (declining to compel the administrator to respond to interrogatories addressing their handling of the claimant's claim,

explaining that "[t]his Court can perceive no information that could be derived from these requests which would bear on the issue of [the administrator's] conflict of interest . . . .") The administrative record tracks the claims-review and decision-making process. As Defendants assert, it is not their responsibility to interpret for Plaintiff the facts as they are reflected in the record. In her forthcoming motion for judgment on the administrative record, Plaintiff is free to point out and argue the significance of any absence of information in the record or Defendants' failure to consult a particular professional.

**B.        Interrogatories Two, Thirteen, and Fourteen & Document Request Twenty-Two**

Defendants also object to Plaintiff's requests seeking extensive information about the individuals involved in processing Plaintiff's claim. Defendants again assert that these inquires exceed the appropriate scope of discovery.

The Court finds Defendants' objections well taken. As set forth above, Defendants have already provided Plaintiff with the name, position, and job functions for each person who substantively reviewed Plaintiff's claim, the CVs of the relevant medical personnel, information about the compensation structure for the relevant positions, a detailed description of the bases of performance evaluations for the relevant positions, and copies of the actual Annual Performance Objectives used to evaluate these positions for the years 2008 through 2010. In addition to this information, Plaintiff, through interrogatories two, thirteen, and fourteen and document request twenty-two, seeks extensive information about each reviewer, including "all previous job titles and the dates that person held each job title listed," "qualifications (which includes, but is not limited to, education and training, degrees, certifications, board certifications, diplomas, and certificates)," copies of "all performance appraisals," and copies of their personnel files. (Pl.'s Ints. 10, ECF No. 38-1.) Based on the information Defendants provided, there is no reason to

explaining that "[t]his Court can perceive no information that could be derived from these requests which would bear on the issue of [the administrator's] conflict of interest . . . .") The administrative record tracks the claims-review and decision-making process. As Defendants assert, it is not their responsibility to interpret for Plaintiff the facts as they are reflected in the record. In her forthcoming motion for judgment on the administrative record, Plaintiff is free to point out and argue the significance of any absence of information in the record or Defendants' failure to consult a particular professional.

**B.        Interrogatories Two, Thirteen, and Fourteen & Document Request Twenty-Two**

Defendants also object to Plaintiff's requests seeking extensive information about the individuals involved in processing Plaintiff's claim. Defendants again assert that these inquires exceed the appropriate scope of discovery.

The Court finds Defendants' objections well taken. As set forth above, Defendants have already provided Plaintiff with the name, position, and job functions for each person who substantively reviewed Plaintiff's claim, the CVs of the relevant medical personnel, information about the compensation structure for the relevant positions, a detailed description of the bases of performance evaluations for the relevant positions, and copies of the actual Annual Performance Objectives used to evaluate these positions for the years 2008 through 2010. In addition to this information, Plaintiff, through interrogatories two, thirteen, and fourteen and document request twenty-two, seeks extensive information about each reviewer, including "all previous job titles and the dates that person held each job title listed," "qualifications (which includes, but is not limited to, education and training, degrees, certifications, board certifications, diplomas, and certificates)," copies of "all performance appraisals," and copies of their personnel files. (Pl.'s Ints. 10, ECF No. 38-1.) Based on the information Defendants provided, there is no reason to

believe that the conflict of interest has prompted Defendants to create policies, procedures, or practices to encourage their reviewers to promote their financial welfare at the expense of a full and fair evaluation of a claimant's claim for benefits. This Court, like other courts considering the issue, therefore concludes that Plaintiff's requests seeking extensive reviewer information lack relevance as they are unlikely to lead to evidence of bias or discrimination. *See Thornton v. Western & Southern Life Ins. Co. Flexible Benefits Plan*, No. 3:08CV-00648-M, 2010 WL 411119, at *3 (W.D. Ky. Jan. 28, 2010) ("[C]ourts typically have refused to permit discovery into the areas falling under the general category of 'reviewer credibility' (e.g., without limitation, the reviewers' personnel files or performance reviews, disciplinary actions, board certifications, educational and professional backgrounds), as those areas are usually deemed unlikely to lead to evidence of bias or discrimination."); *see also Meyers v. Prudential Ins. Co. of Am.*, 581 F.Supp.2d 904, 914 (E.D. Tenn. 2008) ("[The Court is] disinclined at this point to allow discovery of the personnel files and pay records of [administrator's] employees on the ground that it is overly burdensome, *i.e.*, its intrusiveness outweighs its likely benefit and thereby exceeds the needs of the case given its current posture."); *McQueen v. Life Ins. Co. of N. Am.*, 595 F.Supp.2d 752, 756 (E.D. Ky. 2009) ("[T]he court will not require the defendant to respond to requests involving performance reviews and personnel files for reviewers who are its employees. The Court finds that those requests are unduly burdensome and their intrusiveness outweighs any likely benefit."); *Bird v. GTX, Inc.*, No. 08-2852-JPM-cgc, 2009 WL 3839478, at *3 (W.D. Tenn. Nov. 13, 2009) (inquiries into personnel files, performance reviews, pay records, training, and qualification of reviewers improper without further showing of relevance).

C.  **Interrogatory Eleven & Document Requests Four and Five**

In interrogatory eleven, Plaintiff asks Defendants to "[s]tate any rules, guidelines, protocols, standards, and criteria whether published or internal, which were utilized in whole or in part in rendering any decision relating to Ms. Geiger's claim for benefits, or in the administrative appeal thereof." (Pl.'s Ints. 9, ECF No. 38-1.)

Defendants refused to produce a copy of its Claim Policy and Procedures ("P&P"), asserting that they did not specifically consult the P&P in deciding Plaintiff's claim. Defendants explained that if the P&P is used, consulted, or reviewed during the claims process, a reference to the specific pages of the P&P or some other notation would appear in the claim file. Defendants represent that they did not identify any specific reference to the P&P in Plaintiff's file. Defendants did note, however, that when claims representatives review claims, they do so with the benefit of pre-existing knowledge about the contents of and/or their prior use of the P&P. (*See* Defs.' Resp. to Pl.'s Ints. 10, ECF No. 38-2.) Defendants contend that the Court should not order the P&P produced because "much of the P&P is wholly unrelated to Plaintiff's claim," the P&P does "not contain any statements of policy or guidance that are specific to the benefit plan governing the provision of Plaintiff benefits in this case," and because of the proprietary nature of the P&P. (Defs.' Mem. in Opp. 12, ECF No. 41.) Notwithstanding their objections, Defendants produced the table of contents to the P&P, indicating that it would consider producing sections that Plaintiff considered relevant to the conflict of interest issue. Although Defendants insist that the P&P is not discoverable, they assert that at a minimum, "Plaintiff should be required to identify particular topics she believes pertinent to her argument that [Defendants are] biased so that the parties and the Court, if necessary, may focus on what is relevant." (*Id.*)

7

Plaintiff counters that she is entitled to the P&P, even if Defendants only informally relied upon it. She asserts that she cannot discern what information is relevant from the P&P's table of contents. Plaintiff also posits that the current Department of Labor regulations mandate that Defendants must provide her with the information she requests in interrogatory eleven. (*See* Pl.'s Mot. to Compel 20–23.)

The Court agrees with Defendant that their P&P does not fall within the scope of permissible discovery. The Department of Labor's regulations only require production of guidelines actually "relied upon" or "submitted, considered, or generated" in reviewing a claimant's claim for benefits. *See Byrd v. Metropolitan Life Ins. Co.*, No. 3:07-CV-206, 2008 WL 974787, at *2 (E.D. Tenn. Apr. 9, 2008) (*citing* 29 C.F.R. § 2560.503-1(m)(8)) (declining to compel production of the administrator's guidelines where the claimant offered no evidence suggesting that the guidelines were considered and where the administrator submitted a declaration from its representative stating that based upon his review of the administrative record and discussions with the individual reviewers, the guidelines were not used to adjudicate the claimant's claim). Here, Plaintiff has offered no evidence that Defendants actually relied upon or considered the P&P in evaluating her claim. Instead, Defendants represent that they did not specifically consult the P&P in deciding her claim. Defendants further represent that their P&P "does not provide statements of policy or guidance that advises personnel to pay or deny claims based on any criteria, medical diagnosis, or circumstances." (Defs.' Mem. in Opp. 12, ECF No. 41.) Based upon Defendants' representations, and because there is no evidence that Defendants actually consulted or considered the P&P in evaluating Plaintiff's claim, the Court concludes that the P&P is not sufficiently related to the issue of a conflict of interest to warrant its full disclosure. The Court expects Defendants, however, to stand by their offer to consider and

disclose sections Plaintiff believes are relevant to the extent her requests are sufficiently narrowly tailored to elicit evidence of bias.

### D. Interrogatories Nineteen and Twenty

With regard to Plaintiff's inquiries for reviewer-specific statistical data relating to Defendants' claim determinations, interrogatories nineteen and twenty, the Court concludes that Defendants' burden of compiling the requested data outweighs any likely benefit. "'[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.'" *Info-Hold, Inc. v. Sound Merchandising, Inc*., 538 F.3d 448, 457 (6th Cir. 2008) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir.2007)). "Specifically, the Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles*, 474 F.3d at 305 (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)). Here, Defendants have represented that they do not compile the requested information and would have to create it by doing a manual file-by-file review. Given Defendants' articulated burden, the limited relevance of the conflict of interest as simply one consideration among several case-specific considerations, and the information Defendants have provided thus far, the Court declines to compel Defendants to compile and produce this reviewer-specific statistical information.

### E. Document Requests Eighteen and Nineteen

The Court declines to compel Defendants to produce the documents identified in document request numbers eighteen and nineteen because the Court finds that the information

that could be derived from these requests does not shed light on the significance Defendants' conflict of interest.

In document request eighteen, Plaintiff requests documents reflecting the amount of reserves on her Claim. Plaintiff does not explain why she believes that the reserve amounts are relevant to the conflict of interest issue in this case. Instead, she simply asserts that she is "entitled" to the information. (Pl.'s Mot. to Compel 35, ECF No. 38.) Defendant asserts this information is not relevant to the question of bias because the people who made the decisions regarding Plaintiff's claim do not consider or even have access to information regarding any reserve established for the claim. The Court agrees. *See Santos v. Quebecor World Long Term Dis. Pl.*, No. 1:08-CV-565, 2009 WL 1362696, at *10 (E.D. Cal. May 14, 2009) ("If the decision-maker(s) is unaware of the reserve amount, then the reserve amount would have played no role in the decision and would not help to explain the extent or effect of the structural conflict of interest on the claim."); *Wilcox v. Metropolitan Life Ins. Co.*, No. CV 04-0926, 2009 WL 57053, at *3 (D. Ariz. Jan. 8, 2009) (declining to permit discovery into the reserve amounts, finding that it was not sufficiently related to the structural conflict of interest).

In document request nineteen, Plaintiff requests documents regarding the post-claim underwriting file in this case. Although discovery relating to post-claim underwriting may be relevant and discoverable under certain circumstances, Plaintiff has not established its relevance here.

F.     **Requests for Depositions**

As set forth above, the Court disagrees with Plaintiff's assertions that Defendants' discovery responses are so inadequate and insufficient as to warrant an order permitting her to depose two of Defendants' employees. Plaintiff's request to take depositions is, therefore,

denied.

## III.

For the reasons set forth above, Plaintiff's Motion for an Order to Conduct Depositions and Motion to Compel Responsive Answers to Interrogatories and Requests for Production of Documents is **DENIED**. (ECF No. 38.) Cross-Motions on the Administrative Record must be filed **ON OR BEFORE MARCH 9, 2012**. Responses to the Cross-Motions are due **ON OR BEFORE MARCH 30, 2012**.

**IT IS SO ORDERED**.


Date: January 31, 2012 /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge