# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CHRIS A. GEIGER,**

      **Plaintiff,**

                          Case No. 2:10-cv-106
                          JUDGE SMITH
    v.                             Magistrate Judge Deavers

**PFIZER, INC.,** *et al.*,

      **Defendants.**

## OPINION AND ORDER

Plaintiff Chris Geiger brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132. On March 9, 2010, Plaintiff moved for judgment on the administrative record (Doc. 47) against Defendant CIGNA Life Insurance Company of New York ("CIGNA-NY"), alleging an unlawful termination of benefits to which she is entitled under Pfizer, Inc.'s Long-Term Disability Plan No. 504. On this same day, Defendants CIGNA Group Insurance, Pfizer, Inc. Long-Term Disability Plan, and CIGNA-NY (collectively, "Defendants") filed a cross-motion for judgment on the administrative record (Doc. 45).[1] Each side has filed responses. These motions are now ripe for review. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Judgment on the Administrative Record and **DENIES** Defendants' Cross-Motion for Judgment on the Administrative Record.

---

[1] Defendant Pfizer, Inc. joined in Defendants' cross-motion. (Doc. 45, p. 1). Pfizer, Inc. asserts that it is an unnecessary party to this action because Plaintiff's sole claim is for benefits under ERISA. (Answer, Doc. 17, p.1 n.1). Additionally, Defendants maintain that CIGNA Group Insurance is an incorrect party because no such corporate entity or insurance company exists; rather, "CIGNA Group Insurance" is a registered service mark. (*Id.*).

## I. BACKGROUND

Plaintiff is a former employee of Pfizer, Inc. She was employed full-time as a Senior Professional Healthcare Representative (*i.e.*, a pharmaceutical sales rep). Plaintiff is a licensed registered nurse with a Bachelor of Science degree. She began her career with Abbott Laboratories in 1979 until she took a position with the Warner-Lambert Company. She then became employed by Pfizer in June 2000 when Pfizer and Warner-Lambert merged. Defendant CIGNA-NY is the claims administrator and insurer of Pfizer, Inc.'s Long-Term Disability Plan No. 504, Policy No. NYK-2279 ("the Plan"). At all times relevant to this action, Plaintiff was a participant in the Plan. (Administrative Record ("AR"), Doc. 49, 513, 598-600).

On May 19, 2007, Plaintiff fell while horseback riding and fractured her hip. (AR 584-85). She never returned to work at Pfizer. In November 2007, Plaintiff filed a claim for long-term disability ("LTD") benefits due to her hip injury and related problems. On November 20, 2007, Plaintiff underwent total hip replacement surgery. On November 27, 2007, CIGNA-NY approved Plaintiff's receipt of LTD benefits (with a start date of November 19, 2007). (AR 546-48). CIGNA-NY discontinued those benefits on March 26, 2009, based on a review of Plaintiff's medical information by a nurse case manager. The medical information did not reveal "what current restrictions or limitations prevent [Plaintiff] from returning to work." (AR 313-17, 323).

Some notable reports of Plaintiff's health that were considered by CIGNA-NY when deciding to discontinue Plaintiff's benefits include:

- On February 14, 2008, Dr. Barsoum indicated that Plaintiff had full, painless range of motion, with mild pain in the left hip that had "no effect on ordinary activity." (AR 412-

14).

- On March 17, 2008, Dr. Hackshaw, a rheumatologist, noted that Plaintiff's left hip was functioning well and that she had "been able to resume her horseback riding." (AR 429-30). He also noted tender points consistent with fibromyalgia, but "[n]othing else. . . beyond that." (*Id.*).

- On July 28, 2008, Dr. Hackshaw noted that Plaintiff was still horseback riding and that she had injured her finger "doing some farming work." (AR 431-32). He again noted tender points consistent with fibromyalgia, but "[n]othing else. . . beyond that." (*Id.*).

- On August 12, 2008, Plaintiff competed as a rider in the Buckeye Morgan Challenge, a horseback riding competition. (AR 477-79). She placed in three separate events.

- On December 12, 2008, Dr. Hackshaw noted that Plaintiff had twisted her knee while "cleaning a horse" but that she did not have any "difficulty in riding." (AR 427-28).

- On February 2, 2009, CIGNA-NY requested Dr. Hackshaw complete a physical ability assessment form outlining Plaintiff's limitations, but he refused. (AR 416-21). He again did not respond to a February 18, 2009 request for clarification from CIGNA-NY as to how Plaintiff was able to clean and ride her horses, but was not able to work. (AR 343).

- On February 11, 2009, Plaintiff saw Dr. Caligluri and included on her patient history form that she got regular exercise "showing horses" and cleaning stalls." (AR 335).

In addition to the hip issues, Plaintiff also suffers from fibromyalgia, narcolepsy, osteoarthritis, joint pain, pain in both knees, quads and calves, extreme pain in the lower lumbar region, L1 vertebral fracture, multilevel degenerative disc disease, neural foraman narrowing, depression, cognitive dysfunction, and migraines. (AR 266, 268, 336). Plaintiff appealed the

3

denial of LTD benefits based on the combination of all of her medical issues.  (AR 262-75).  Plaintiff submitted additional medical documentation from Drs. Hackshaw, Saribalas, Richardson and Singh opining that Plaintiff should refrain from working or is unable to work.  (AR 303-13).  On September 23, 2009, CIGNA-NY denied that appeal.  (AR 102).  On January 8, 2010, Plaintiff was awarded Social Security disability benefits based on a finding that she is unable to work in any job in the national economy.  Plaintiff informed CIGNA-NY of this on January 20, 2010.  Plaintiff again appealed to CIGNA-NY and it upheld its denial on March 2, 2010.  (AR 95-97).  Plaintiff then filed this lawsuit on February 5, 2010.

**A.     Plaintiff's Job Description**

The essential functions of Plaintiff's position as a Senior Professional Healthcare Representative include:

- Make at least 8-10 sales calls per day to physicians' offices within her territory;
- Perform 8 hours of field time each day per district standard hours;
- Conduct/attend evening programs when warranted;
- Handle and distribute starter drug samples in accordance with company policy;
- Use a computer to enter all calls and drug sample drugs into database each day;
- Check voice mail regularly during the work day;
- Log in and answer e-mail each business evening;
- Travel to, attend and participate in evening district functions such as dinners or team meetings;
- Send required reports into District Manager on a weekly/monthly basis;
- Lift up to 25 pounds; and

- Safely operate a motor vehicle in accordance with company policy and applicable driving rules and regulations.

(AR 600).

**B.    Applicable Plan Provisions**

The Plan provides for replacement of a portion of a participating employee's annual pay should the employee become unable to work for an extended period of time due to a sickness or injury, as defined by the Plan.[2] Following a benefit waiting period, benefits are payable for up to 24 months when the employee's sickness or injury makes her "unable to perform all the material duties of his or her regular occupation" (referred to as the "own occupation period"). (AR 202). After 24 months, benefits are payable only if the employee's sickness or injury makes her "unable to perform all the material duties of any occupation for which [she] may reasonably become qualified based on education, training or experience" (referred to as the "any occupation period"). (*Id.*).  Benefits continue to be payable under the Plan until an employee: (1) is no longer disabled; (2) is no longer under the care of a physician; (3) fails to provide proof of disability; (4) reaches age 65; or (5) dies, whichever comes first.  (Ex. A to Am. Compl., Doc. 16-1).

## II.    STANDARD OF REVIEW

Plaintiff's claim for benefits is governed by ERISA.  Section 502(a)(1)(B) gives Plaintiff the right, as a participant of the Plan, to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify

---

[2] Under the Plan, a "sickness" is defined as "a physical or mental illness," including pregnancy. (AR 253). An "injury" is defined as "[a]ny loss or bodily harm that results directly or indirectly from all other causes from an Accident, including all related conditions and recurring symptoms of the injuries."  (*Id.*)

5

[her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B).  We review a challenge to a denial of ERISA plan benefits under a *de novo* standard "unless the plan provides to the contrary."  *Metro. Life Insur. Co. v. Glenn*, 554 U.S. 105, 111 (2008).  Under such circumstances where the "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the more deferential "arbitrary and capricious" standard of review applies. *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 441 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

> In the instant case, the Plan clearly vests discretionary authority in CIGNA-NY:
>
> For plans subject to [ERISA], the Plan Administrator of the Employer's employee welfare benefit plan (the Plan) has appointed the Insurance Company [i.e. CIGNA-NY] as the Plan Fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan documents,to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.

(AR 248).  Thus, the Court will apply the arbitrary and capricious standard to this case.

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).  Under this standard, a court will uphold an administrator's decision if it is rational in light of the plan's provisions.  *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (citation omitted).  "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Id.*; *see also Baker v. UMWA Health & Retirement Funds*, 924 F.2d 1140, 1144 (6th Cir. 1991) ("Applying the abuse of discretion standard in this context requires that the [administrator's] decision be upheld if it is

6

the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."). The arbitrary and capricious standard, however, does not require a court to merely rubber stamp the administrator's decision; instead, a court "must exercise review powers." *Jones v. Metro. Life Co.*, 385 F.3d 654, 661 (6th Cir. 2004).

When conducting its review of a denial of benefits claim, the Court is generally "limited to consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998); *see also Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2003). The Court is required to review the plan administrator's decision based on the administrative record and render findings of fact and conclusions of law accordingly. *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). In reviewing the record and the administrator's determination, however, the Court will take into consideration the fact that a defendant is acting under a conflict of interest based on being both the decision-maker, who determines which claims are covered, and the payor of those claims. *Glenn*, 554 U.S. at 115–16; *Johnson v. Conn. Gen'l Life Insur. Co.*, 324 Fed. Appx. 459, 465 (6th Cir. 2009). The weight that a conflict of interest receives is determined by case-specific factors. *Glenn* at 116–17 ("[C]onflicts are but one factor among many that a reviewing judge must take into account."); *Johnson* at 465–66.

### III. DISCUSSION

Plaintiff Chris Geiger argues that Defendants' decision to terminate her long term disability benefits was arbitrary and capricious for the following reasons: Defendant did not actually consider whether she could perform the duties of her position; it was not rational for the Plan administrator to require Plaintiff to produce objective medical evidence; Defendant should

have given some weight to the fact that Plaintiff was awarded Social Security disability benefits; Defendants relied on non-experts in assessing Plaintiff's claim; and Defendant has a history of bias. Defendants generally assert that the decision to terminate Plaintiff's benefits was rational, and not arbitrary and capricious. The Court will discuss both parties arguments in turn.

**A.     Whether Plaintiff could perform the duties of her occupation**

Plaintiff asserts that Defendants' failure to consider her occupational requirements or specifically assess whether she could perform them was arbitrary and capricious. Defendants, however, maintain that the record lacks objective proof that she was incapable of performing the duties of her own regular light duty position and thus, did not act in an arbitrary and capricious manner in denying Plaintiff's claim for long term disability benefits.

When "the Plan language explicitly state[s] that a participant is disabled so long as 'he is unable to perform all the material and substantial duties of his occupation,'" the proper inquiry is whether the claimant could perform the duties the claimant's occupation actually entailed." *Kalish v. Liberty Mutual*, 419 F.3d 501, 506-07 (6th Cir. 2005); *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 618 (6th Cir. 2006) (noting that district court's reasoning was in error "because it relies on a general notion of 'sedentary' work rather than on the duties that [the claimant's] occupation entailed").

Plaintiff relies on *Hunter v. Life Ins. Co. of North America*, 437 Fed. Appx. 372, 376-77 (6th Cir. 2011), in support of her arguments. The Sixth Circuit in *Hunter* was faced with the same definition of disabled as the Plan in the case at bar. The Sixth Circuit held that it was irrational for the defendant insurance company to analyze whether the plaintiffs could perform "sedentary work," as opposed to whether she could perform her actual job duties. *Id.* The Sixth

Circuit held that plaintiff's actual job duties involved substantially more walking and standing than a "sedentary" job and, therefore, "because [defendant] did not assess the actual requirements of Hunter's prior occupation, specifically the walking, standing, and overtime requirement, its decision to terminate her LTD benefits was arbitrary and capricious." *Id.*, citing *Elliott*, 473 F.3d at 618; *Evans v. Unum Provident Corp.*, 434 F.3d 866, 879-80 (6th Cir. 2006); *Kalish*, 419 F.3d at 506-07).

Plaintiff argues that Defendant did not consider whether she could do her job, but rather concluded that she was capable of performing "light work" as defined by the United States Department of Labor. (AR 95-97; 127; 313-17). Plaintiff asserts that if Defendant had considered whether she could perform the actual duties of a Senior Professional Healthcare Representative, "it would have been abundantly clear that she could not." (Pl.'s Mot. at 19). Plaintiff asserts that the findings of the polysomnogram and sleep latency study demonstrate that she suffers from "severe daytime sleepiness" which makes it difficult for her to stay awake during the day for work and affects her ability to safely operate heavy equipment, including a motor vehicle. (AR 303-13; 328). Additionally, she asserts that the pain and fatigue related to her fibromyalgia make it "virtually impossible for Ms. Geiger to stand and walk to the degree required in her former job and make it very difficult for her to concentrate on work tasks." (Pl.'s Mot. at 19; AR 303-13; 327-28; 356; 511-14).

Plaintiff even takes issue with Defendants' conclusion that she could perform light work, she asserts that had Defendant CIGNA-NY adequately analyzed whether Plaintiff could perform light work "it would have recognize that she could not consistently exert force, walk or stand to a significant degree, consistently push or pull her arms or legs, or constantly push or pull materials

9

as is required in a "light work" occupation." (Pl.'s Mot. at 20).

Defendants argue that CIGNA-NY engaged in a deliberate, principled reasoning process. They argue that Plaintiff "misses the point. This is not a situation in which the parties agree on the extent of a claimant's limitations, with the only question being whether those agreed upon limitations affect job performance. Instead, this is a situation where [CIGNA-NY] rationally concluded that the Record contained insufficient objective evidence of Geiger's self-reported limitations. Thus it never reached the point of needing to analyze whether those purported limitations interfered with any particular job requirement." (Defs.' Response at 4).

The Court is understanding of CIGNA-NY's conclusion, especially in light of the evidence of Plaintiff's farming and competitive horse back riding**.** However, Plaintiff is correct that CIGNA-NY did not sufficiently consider her occupational requirements in making their determination to terminate her long term disability benefits. Further, Defendants' argument that the Record contained insufficient objective evidence is not sufficient basis on which to rely, at least with respect to the fibromyalgia diagnosis. Plaintiff, relying on *Holler v. Hartford Life & Accident Ins. Co.*, 737 F. Supp.2d 883 (S.D. Ohio 2010) (Hogan, J.), argues that this Court has determined that it is not rational for a plan administrator to require a claimant to produce such objective medical findings when the condition complained of is fibromyalgia, the existence of which cannot be proved through objective tests.

"Fibromyalgia is a form of rheumatic disease with no known cause or cure. The principal symptoms, which are entirely subjective, are pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied by fatigue, sleep disturbances, anxiety,

dizziness, irritable bowels and tension headaches." *Holler*, 737 F. Supp.2d at 891, citing *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1067 (9th Cir. 1999). The Sixth Circuit has also noted the difficulty in diagnosing fibromyalgia. "Unlike most diseases that can be confirmed or diagnosed by objective medical tests, fibrositis can only be diagnosed by eliminating other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue." *Id.* citing *Preston v. Secretary of Health & Human Servs.*, 854 F.2d 815, 817-19 (6th Cir. 1988).

The Court therefore finds that CIGNA-NY acted arbitrarily and capriciously. The Sixth Circuit has recognized that when a court finds that issues with the decision-making process exist, then the "appropriate remedy generally is remand to the plan administrator." *Elliot*, 473 F.3d at 622. Accordingly, Plaintiff's claim shall be remanded to CIGNA-NY for consideration of Plaintiff's occupational requirements.

**B.     Social Security Administration Decision**

Plaintiff argues that CIGNA-NY's failure to afford any weight to the Social Security Administration's determination that she was totally disabled from performing any job, in light of the fact that she was required to apply for the benefit under the terms of the Plan, supports a finding that its claim decision was arbitrary and capricious.

The Sixth Circuit has stated that where a plan administrator requires a claimant to apply for Social Security Disability benefits, benefits financially from the receipt of Social Security, and does not explain why it reached a different outcome than the Social Security Administration, this, among other factors, demonstrates the decision of the plan administrator was arbitrary and capricious. *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009).

Similarly, in Glenn, the Supreme Court found that MetLife's failure to consider the Social Security Administration's finding of disability, after it encouraged Glenn to apply for the benefits, justified giving more weight to MetLife's inherent conflict of interest and demonstrated that the decision denying benefits was arbitrary and capricious.  *Glenn*, 554 U.S. at 118.

Plaintiff asserts that she was instructed to apply for Social Security disability benefits, and then when she received them, Defendants failed to consider that.  On January 16, 2008, Plaintiff received correspondence from a CIGNA-NY claim manager notifying her that she had not submitted an initial claim form for Social Security disability benefits to Advantage 2000–a third party CIGNA-NY uses to provide Social Security disability claim assistance to plan participants.  (AR 543).  The letter noted that "[i]t is required by your policy to apply for this benefit and appeal any denials."  *Id.*  The Plan further states that "[i]f the Employee refuses to participate in, or cooperate with, the Social Security Assistance Program, the Insurance Company will assume receipt of SSDI benefits until the Employee gives us proof that all administrative remedies are exhausted."  (AR 245).  The Plan also provides that CIGNA-NY "reduces the Disability Benefits payable by the amount of such Other Income Benefits" – including "any Social Security disability . . . benefits the Employee or any third party receives (or is assumed to receive) on the Employee's behalf or for his or her dependents. . .."  (AR at 244).

Plaintiff, therefore, argues that she was required under the Plan to apply for Social Security disability benefits and that Defendants were aware, but "failed to afford any weight to the Social Security Administration's decision finding Ms. Geiger totally disabled."  (Pl.'s Mot. at 24).

Defendants assert that Plaintiff "ignores the fact that the SSDI decision is not in the Record. Geiger bears the burden of proving that she is entitled to benefits, and without that decision in hand, [CIGNA-NY] could not reasonably have been expected to analyze and weigh the SSDI findings." (Def.'s Response at 4).

Plaintiff does not dispute that the Social Security Administration's decision does not appear anywhere in the administrative record at all. Rather, Plaintiff asserts that CIGNA-NY was aware of the decision on January 20, 2010, when it received an invoice from Advantage 2000 for its services in representing Ms. Geiger in seeking social security disability benefits. The invoice further notes that retroactive benefits were paid in the amount of $11,450.00. (AR 260).

There is no question that the Plan required Plaintiff to apply for Social Security benefits and it was further relayed to Plaintiff in the January 16, 2008 letter from CIGNA-NY that stated "[i]t is required by your policy to apply for this benefit and appeal any denials." (AR 543). CIGNA-NY even provided Plaintiff with a professional service (Advantage 2000) to assist in the application process. Indeed, Plaintiff did apply for and receive Social Security disability benefits with the assistance of Advantage 2000.

CIGNA-NY benefits from Plaintiff's receipt of Social Security disability payments. According to the Plan, the benefits will be reduced by the actual or estimated Social Security disability payments and in fact, CIGNA-NY did reduce Plaintiff's benefit based on the Social Security disability estimate in the amount of $2,131.00. (AR 543).

Based on this information, the findings of the Social Security Administration should have at least been noticed by CIGNA-NY during its review of Plaintiff's claim for long term disability

benefits.  *See Borys v. Metro. Life Ins. Co. Metlife Disability*, 2005 U.S. Dist. LEXIS 8013 (S.D. Ohio 2005) (Marbley, J.), citing *Hurse v. Hartford Life & Accident Ins. Co.*, 77 Fed. Appx. 310, at *6 (noting that SSA determinations on benefits "should carry significant weight" if "there is evidence that the plan administrator urged or aided the claimant in his pursuit of social security benefits"); *Napier v. Hartford Ins. Co.*, 282 F. Supp. 2d 531 (E.D. Ky. 2003) (holding that Hartford "erroneously ignored" the SSA's determination of complete disability after it "actively encouraged" Plaintiff to seek SSDB).

The Court acknowledges that there is very little in the record on the Social Security Administration's decision and Plaintiff could have supplemented the record.  Nonetheless, CIGNA-NY was at least aware of the fact that Plaintiff was awarded Social Security benefits.  Therefore, since CIGNA-NY required Plaintiff to seek Social Security disability benefits and they received a monetary benefit from them, then CIGNA-NY must consider and distinguish the Social Security Administration's findings of total disability.  The Social Security Administration's determination is not binding, but at least should have been acknowledged by Defendants.  Accordingly, for this additional reason, the Court finds Defendants acted arbitrarily and capriciously in evaluating Plaintiff's long term disability benefits claim.  On remand, the parties are encouraged to make sure the Administrative Record includes the Social Security information and this information must be considered by Defendants.

**C.     Alleged History of Bias by Defendants**

Plaintiff argues that CIGNA-NY has a history of bias claims handling which should be considered as a factor in determining whether its claim decision in this matter was arbitrary and capricious.  In 2007, the California Department of Insurance examined CIGNA's claims files and

of the 224 examined, 57 claim-handling violations were identified.  (Pl.'s Mot. at 33).  CIGNA paid a $600,000 penalty as a result.  Some of the claim-handling violations included: failing to consult with a health care professional and ignoring substantial information that came into the file after the initial denial.

In *Glenn*, the Supreme Court determined that a conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration."  *Glenn*, 554 U.S. at 117.  Plaintiff further relies on *Geer v. Hartford Life & Accident Ins. Co.*, 2009 U.S. Dist. LEXIS 48332 (E.D. Mich. 2009) and *Paul v. Hartford Life & Accident Ins. Co.*, 2008 U.S. Dist. LEXIS 59986 (D. Colo. 2008), that determined that the existence of such market studies documenting past claim-handling violations were sufficient to warrant discovery to explore the degree of a conflict of interest.

Defendants, however, argue that Plaintiff's allegations of bias are irrelevant to this case.  The report referenced by Plaintiff involves Life Insurance Company of North America ("LINA"), which is related to, but distinct from CIGNA-NY.  Defendants point out that the report specifically states "[a]ny alleged violations identified in this report and any criticisms of practices have not undergone a formal administrative or judicial process."  In *Nash v. Life Ins. Co. of North America*, 2010 U.S. Dist. LEXIS 134024 (S.D. Calif. 2010), the court determined that the market study should be given "little or no weight" when examining a conflict of interest issue because the "alleged violations" and criticisms of practices" the market study identified "have not undergone a formal administrative or judicial process."

Based on the aforementioned, the Court does not find any bias by CIGNA-NY. As discussed previously, since CIGNA-NY is financially responsible for paying Plaintiff's claims, they are operating under an inherent conflict of interest. However, as discussed by the Sixth Circuit, this is not sufficient to alter the deferential standard of review. In *Iley*, the Court held:

> When conducting a review under the arbitrary and capricious standard, a court is allowed to consider a conflict of interest if the same entity both determines benefit eligibility and pays benefits. *Jackson v. Metro. Life*, 24 Fed. Appx. 290, 292 (6th Cir. 2001). However, mere allegation of a conflict of interest will not suffice. *Id.* "There must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." *Id.* (noting that it was insufficient for the plaintiff to claim "nothing more than an inherent, structural conflict of interest"). Here, neither [plaintiff] nor the district court pointed to any evidence that the alleged conflict of interest affected [the insurance company's] decision to terminate [plaintiff's] benefits. As such, it was improper to find that [the insurance company] acted under a conflict of interest.

*Iley*, 261 Fed. Appx. at 864. Plaintiff in the case at bar has also failed to point to any evidence that the alleged conflict of interest affected Defendants' decision to terminate her LTD benefits. Therefore, there is no additional conflict of interest that must be considered.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Judgment on the Administrative Record (Doc. 47) and **DENIES** Defendants' Cross-Motion for Judgment on the Administrative Record (Doc. 45).

The Clerk shall remove Documents 45 and 47 from the Court's pending motions list.

The Clerk is instructed to close this case and remand it to the plan administrator, CIGNA-NY, to conduct a full and fair review of Plaintiff's claim for long term disability benefits consistent with this decision.

**IT IS SO ORDERED.**

                                        *s/ George C. Smith*  
                                        **GEORGE C. SMITH, JUDGE**  
                                        **UNITED STATES DISTRICT COURT**